Victor Monterrosa Esq. and
Norrinda Brown Hayat Esq., Supervising Attorneys
Akua Dawes and Kamaria Guity, Student Attorneys
Rutgers Law School Civil Justice Clinic
123 Washington St.
Newark, NJ 07102
(973) 353 – 0661
(973) 353 –3397 (fax)
Victor.Monterrosa.Jr@gmail.com
Norrinda.hayat@rutgers.edu
Kamaria.guity@rutgers.edu
Akua.dawes@rutgers.edu

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAMANTHA CAMPANICELLO-CASON, T.C., K.C., and GARRETT CASON, JR.<br><br>Plaintiff,<br><br>vs.<br><br>KEVIN O'REILLY,<br><br>Defendant. | Civil Action<br><br>Hon._____<br><br>**CIVIL COMPLAINT** |

Now comes Plaintiffs, Samantha Campaniello-Cason, individually and on behalf of her minor children T.C. and K.C., and Garrett Cason, Jr., by way of her attorneys, who respectfully alleges as follows:

### I. JURISDICTION

1.   Jurisdiction is conferred upon this court by 28 U.S.C. §§ 1331 and 1367 as it raises claims under a federal statute and related state claims, and by 28 U.S.C. 1367

2.   This action is brought in the United States District Court for the judicial district in which the plaintiffs resides.

## II. PARTIES

3. During all times relevant to the present complaint, Plaintiffs resided at 67 Pulaski Avenue, Wallington, New Jersey 07057.

4. The Defendant, Kevin O'Reilly, resides at 67 Pulaski Avenue, Wallington, New Jersey 07057.

## III. FACTUAL ALLEGATIONS

5. Beginning in August 2016, Plaintiff Samantha Campaniello-Cason entered into a written lease agreement ("lease agreement") with Defendant. The lease agreement provided Plaintiffs use of a two-bedroom apartment located at 67 Pulaski Avenue Apt. 2, Wallington, New Jersey 07057 at a monthly rate of $1,250.

6. Samantha and her husband are currently separated, and were separated at the time Plaintiffs lived in Defendant's building. Samantha is Italian and Hispanic, and her husband is African American. Samantha's husband is also the father of Plaintiffs Garrett, T.C., and K.C.

7. For the first several months of Plaintiffs' tenancies, Plaintiffs and Defendant were on friendly, professional terms. Defendant was affectionate towards Plaintiffs and their dog. Defendant responded to Samantha's messages and calls if she needed to contact him. Defendant fixed a fuse in Plaintiffs' kitchen. Defendant also praised Plaintiffs for being quiet tenants.

8. Defendant's attitude changed in or around November 2016, when Samantha's husband visited Plaintiffs' apartment to spend a week with his children. Samantha's husband came to visit from Cambria Heights, New York.

9. During Samantha's husband's visit, Defendant told Samantha that her husband "has to get out" because Defendant does not "want those kinds of people" in his building. Defendant also called Samantha's husband a "n*gger."

10. After Samantha's husband visited the apartment, Defendant began harassing Plaintiffs.

11. Immediately following Samantha's husband's visit, Defendant turned off the heat in Plaintiffs' apartment. The heat remained off for most of the winter. Samantha was forced to buy electric heaters to keep her and her children warm.

12. When Samantha continued to ask Defendant about the heat, he ignored her messages and avoided her in person. Defendant fixed the heat in most of the apartment, but only after Samantha spoke with Defendant's daughter. Defendant never fixed the heat in T.C. and K.C.'s room, which was an issue all winter.

13. Defendant called Samantha a "spic" several times throughout her tenancy.

14. Samantha hired a babysitter, an African American woman, to watch T.C. and K.C. When the babysitter came to the apartment, Defendant said that he did not want "those kinds of people" in his building.

15. In April 2017, Samantha's husband visited the apartment to spend time with his children Garrett, T.C., and K.C. While Samantha's husband was in Plaintiffs' apartment, as a further act of harassment, Defendant unnecessarily and unfoundedly called the police on Samantha's husband in an attempt to have him removed from the apartment. No action was taken by the police when they arrived.

16. In August 2017, Defendant presented Samantha with a new lease to sign. The new lease included several changes from the original lease, which were intended to and did further harass Plaintiffs. The changes included:

   a. Defendant raised Plaintiffs' rent from $1,250 to $1,275 claiming that Plaintiffs did not pay enough in rent to cover internet;

   b. Defendant started charging Plaintiffs $40 per month for heat and hot water, both of which were included in the rent under the original lease;

   c. Defendant added a term whereby Plaintiffs would have to provide Defendant with two-weeks-notice if they wanted to have guests stay overnight at their apartment and Defendant needed to provide his consent.

17. Defendant first notified Samantha that the new lease would not allow anyone to spend the night in response to her telling him that her husband would be staying at the apartment again.

18. In August 2017, Samantha's mother came to visit Plaintiffs from Bellerose, New York. Samantha's mother asked to stay over for the night rather than drive back home that evening. Because of the terms added to the lease by Defendant, Samantha's mother was forced to leave that night. She was very upset and did not visit her daughter and grandchildren at the property again.

19. In or around April 2018, within earshot of Plaintiffs, Defendant stated that "n*ggers should be hanged in the park."

20. Samantha planned a graduation party for T.C. and Garrett, who were graduating junior high and high school, respectively. In June 2018, Samantha gave Defendant thirty-seven

(37) days' notice, well in excess of the two-weeks-notice required by the lease, that several family members would be staying overnight.

21. Defendant demanded that Samantha tell him the names of every person who would be attending the graduation party. Samantha refused out of concern that Defendant would react badly if he was able to determine from the names that African Americans and other people of color would be attending.

22. On or around June 15, 2018, Defendant took away Plaintiffs' garbage cans because Samantha would not give him a list of the guests that would be attending the graduation party.

23. The day after Samantha refused to give Defendant a list of her guests and about two weeks before the graduation party, Defendant posted dozens of unofficial eviction notices throughout the building, on the front door, and in all of the outward facing windows in an effort to publicly intimidate, harass, and humiliate Plaintiffs in front of their friends, family, and neighbors.

24. Garrett saw Defendant shove Samantha as she was trying to remove the unofficial eviction notices. Samantha called the police to report that Defendant was harassing her for removing the unofficial eviction notices.

25. Plaintiffs were so embarrassed and overwhelmed that Samantha was forced to cancel the party.

26. T.C. missed out on a scholarship that required an at-home interview because she was embarrassed by Defendant's harassing behavior.

27. In June 2018, Defendant kept the front door of the building open and did not respond to Samantha's text messages expressing concern that this compromised her children's safety.

28. On August 1, 2018, Defendant advised Samantha that he would not be renewing the lease and that Plaintiffs must vacate the premises so that he could have the apartment for personal use.

29. In August 2018, Samantha hired carpet cleaners to clean the apartment before moving out. When Defendant saw the cleaning people arrive, he turned off the water in the apartment so that the carpet could not be cleaned. Samantha called the police to report that Defendant shut off the water.

30. Defendant refused Samantha's request for a walkthrough.

31. Defendant is still in possession of Plaintiffs' refrigerator. Moving the refrigerator out of the apartment would have required Defendant to remove the door from its hinges, something Defendant refused to do for Plaintiffs. Samantha was unable to remove the door from its hinges by herself.

32. Defendant continued harassing Plaintiffs by refusing to forward Plaintiffs' mail to their new address.

33. Defendant never returned Plaintiff's $1,875 security deposit or sent an itemized list of deductions in violation of the Rent Security Deposit Act, N.J.S.A. 46:8-21.1.

34. From the moment Samantha's husband came to visit, Defendant has discriminated against Plaintiffs by engaging in racially motivated harassment in violation of the New Jersey Law Against Discrimination, N.J.S.A. §10:5-12.

35. Defendant repeatedly made racially discriminatory statements to, about, and in front of Plaintiffs in violation of the Fair Housing Act, 42 U.S.C. 3604(c).

## COUNT I:

### STATEMENTS IN VIOLATION OF THE FAIR HOUSING ACT, 42 U.S.C. 3604(C)

36. Plaintiffs allege and re-allege paragraphs 1-36 set forth in this Complaint.

37. Defendant expressed that "n*ggers" should be hanged in the park" despite his understanding that Garrett, T.C., and K.C. are African American and were in earshot at the time.

38. Defendant expressed that he did not want "those kinds of people" in his building when he saw that Samantha's African American husband was visiting. Defendant also called Samantha's husband a "n*gger."

39. Defendant expressed that he did not want "those kinds of people" in his building when referring to T.C. and K.C.'s African American babysitter.

40. Defendant called Samantha a "spic" several times throughout her tenancy.

41. The foregoing facts and circumstances demonstrate that Defendant has violated the Fair Housing Act, 42 U.S.C. §3604(c), by making discriminatory statements to Plaintiffs regarding their race and color, indicating his discrimination against African Americans living in and visiting his building.

## COUNT II:

### HARASSMENT IN VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. §10:5-12(g)(1)

42. Plaintiffs repeat and re-allege paragraphs 1-36 set forth in this Complaint.

43. Defendant has engaged in a pattern and practice of racial discrimination and harassment leading to the unlawful refusal to rent to Plaintiffs because of their race by engaging in the following actions:

   a. When Samantha's husband visited the apartment in or around November 2016, Defendant told Plaintiff Samantha that her husband "has to get out" because Defendant does not "want those kinds of people" in his building and he called her husband a "n*gger";

   b. Defendant stated that he did not want "those kinds of people" in his building when referring to T.C. and K.C.'s African American babysitter;

   c. Defendant failed to answer Samantha's multiple requests to fix the heat. Defendant fixed the heat in most of the apartment only after Samantha spoke with Defendant's daughter. Defendant never fixed the heat in T.C. and K.C.'s room;

   d. Defendant called Samantha a "spic" several times throughout her tenancy;

   e. Defendant unnecessarily and unfoundedly called the police on Samantha's husband while he was in Plaintiffs' apartment visiting his children.

   f. Defendant stated that "n*ggers should be hanged in the park";

   g. Defendant increased Plaintiffs' rent and required Plaintiffs to ask for his permission before inviting guests into their home;

   h. Defendant posted unofficial eviction notices all over the building and in all of the windows with the aim of embarrassing Plaintiffs;

44. The foregoing facts and circumstances demonstrate that Defendant has violated the New Jersey Law Against Discrimination, N.J.S.A. §10:5-12(g)(1) by engaging in discriminatory and harassing actions against Plaintiffs and their guests due to their race.

## COUNT III:

## HARASSMENT IN VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. §10:5-12(g)(2)

45. Plaintiffs repeat and re-allege paragraphs 1-36 set forth in this Complaint.

46. Defendant added terms to the 2017-2018 lease that were disadvantageous to Plaintiffs after Samantha's husband came to visit.

47. Changes to the 2017-2018 lease included:

   d. Defendant raised Plaintiffs' rent from $1,250 to $1,275 claiming that Plaintiffs did not pay enough rent to cover internet;

   e. Defendant added a $40 monthly charge for heat and hot water, both of which were included in the rent under the original lease;

   f. Defendant added a term whereby Plaintiffs would have to provide Defendant two-weeks-notice if they wanted to have guests stay overnight at their apartment and Defendant needed to provide his consent.

48. Defendant first notified Samantha that the new lease would not allow anyone to spend the night in response to her telling him that her husband would be staying at the apartment again.

49. Defendant unnecessarily and unfoundedly called the police on Samantha's husband while he was in Plaintiffs' apartment visiting his children.

50. Defendant has repeatedly engaged in discriminatory and harassing behaviors towards Plaintiffs because of their race in violation of the New Jersey Law Against Discrimination, N.J.S.A. §10:5-12(g)(2).

## COUNT IV:

## HARASSMENT IN VIOLATION OF THE NEW JERSELY LAW AGAINST DISCRIMINATION, N.J.S.A. §10:5-12(g)(3)

51. Plaintiffs repeat and re-allege paragraphs 1-36 set forth in this Complaint.

52. Defendant stated that Plaintiff Samantha's husband had to leave because he did not want "those kinds of people" in his building. Defendant also called Plaintiff Samantha's husband a "n*gger."

53. Defendant expressed that he did not want "those kinds of people" in his building when T.C. and K.C.'s African American babysitter came to the apartment.

54. Defendant called Samantha a "spic" several times throughout her tenancy.

55. Defendant stated that "n*ggers should be hanged in the park."

56. Defendant posted unofficial eviction notices all over the building and in all of the windows with the aim of embarrassing Plaintiffs.

57. Defendant repeatedly made discriminatory statements to Plaintiffs and about their visitors in violation of the New Jersey Law Against Discrimination §10:5-12(g)(3).

## COUNT V:

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

58. Plaintiffs repeat and re-allege paragraphs 1-36 set forth in this Complaint.

59. Defendant's discriminatory actions were intended to cause Plaintiffs emotional distress. Alternatively, Defendant acted purposefully or recklessly and in complete disregard of a high degree of probability that emotional distress would follow from his actions.

60. Defendant's conduct was so appalling and intolerable that it should be considered absolutely unacceptable. Defendant's conduct included but is not limited to:

   i. While Samantha's husband was visiting the apartment in or around November 2016, Defendant told her that her husband "has to get out" because Defendant does not "want those kinds of people" in his building. Defendant also called Samantha's husband a "n*gger";

   j. Defendant stated that he did not want "those kinds of people" in his building when referring to T.C. and K.C.'s African American babysitter;

   k. Defendant failed to answer Samantha's multiple requests to fix the heat, forcing Plaintiffs to use electric heaters. Defendant fixed the heat in most of the apartment only after Samantha spoke with Defendant's daughter. Defendant never fixed the heat in T.C. and K.C.'s room;

   l. Defendant called Samantha a "spic" several times throughout her tenancy;

   m. Defendant unnecessarily and unfoundedly called the Police on Samantha's husband while he was in Plaintiffs' apartment visiting his children.

   n. Defendant stated that "n*ggers should be hanged in the park";

   o. Defendant increased Plaintiffs' rent and required Plaintiffs to ask for his permission before inviting guests into her home;

   p. Defendant did not allow Samantha's mother to stay over for one night;

q. Defendant humiliated Plaintiffs by posting unofficial eviction notices all over the building and in all of the windows for all to see;

r. Defendant repeatedly harassed Samantha for a list of who would be attending her children's graduation party. Samantha refused to provide the list because she was concerned Defendant would harass guests who were African American.

61. Plaintiffs have been severely and permanently harmed by Defendant's abusive and reprehensible conduct.

## COUNT VI:

**VIOLATION OF THE RENT SECURITY DEPOSIT ACT, N.J.S.A. 46:8-21.1**

62. Plaintiffs repeat and re-allege paragraphs 1-36 set forth in this Complaint.

63. Defendant received Samantha's security deposit in the amount of $1,875 at or around the time Plaintiffs moved in on August 27th, 2016.

64. Defendant had a statutory duty to return Samantha's deposit, plus interest, within thirty days of August 13, 2018, when Plaintiffs moved out.

65. Defendant never informed Samantha of any damage to the apartment, nor did he provide an itemized list of deductions as required by N.J.S.A.46:8-21.1.

66. Defendant has refused or ignored multiple requests from Samantha for her security deposit.

WHEREFORE, as to each and every count, Plaintiffs demand judgment on each and all of these Counts against Defendant as follows:

a. Compensatory damages to be determined by the Court;

  b. Damages for humiliation, mental, and emotional distress for Plaintiffs Samantha, Garrett, T.C., and K.C.;

  c. Punitive damages and or liquidated damages where permitted by law;

  d. Attorney's fees and costs of suit;

  e. Plaintiffs' security deposit doubled, plus interest;

  f. Judgment for any such other relief as the Court finds just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by a jury of all issues so triable.

Dated:_____, 2020

Rutgers Civil Justice Clinic
s/Akua Dawes
s/Kamaria Guity
Clinical Law Student

s/Victor Monterrosa, Jr., Esq.
s/Norrinda Brown Hayat, Esq.
Supervising Attorney

_____
Attorneys for Plaintiff