# Bittiger Elias & Triolo P.C.
ATTORNEYS AT LAW

JASON L. BITTIGER [Δ]
PAUL M. ELIAS [Δ]
PRISCILLA J. TRIOLO [Δ]
ROBERT A. DIEHL [Δ]

HOPE M. DEUTSCH
MICHAEL R. SPALTRO

[Δ] ADMITTED IN NEW YORK & NEW JERSEY

**REPLY TO NEW JERSEY OFFICE:**
12 ROUTE 17 NORTH, SUITE 206
PARAMUS, NEW JERSEY 07652
TEL: (201) 438-7770
FAX: (201) 438-5726
WWW.BITTLAW.COM

PRISCILLA J. TRIOLO
PTRIOLO@BITTLAW.COM

January 14, 2021

**Via ECF**
Hon. Magistrate Leda Dunn Wettre, U.S.M.J.
United States District Court, District of New Jersey
50 Walnut Street, Court Room MLK 4A
Newark, New Jersey 07102

Re:   **Campaniello-Cason et al v. O'Reilly**
      **Case No.: 2:20-cv-03381-MCA-LDW**

Dear Magistrate Judge Wettre:

As you are aware this firm represents Kevin O'Reilly in connection with the above-referenced matter. Please accept this letter as an objection to the request for a consent filing of an Amended Complaint. The Plaintiff has not asserted that the discovery process provided any information that she was not aware when the Complaint was filed necessitating an Amended Complaint.

Because the Plaintiff has made representations concerning the need for an Amended Complaint, I provide the Court with a Copy of Defendant's answer to interrogatories as well as a letter produced in discovery from the Plaintiff to the Defendant that are relevant to this objection.

Specifically, our reasons are as follows:

1.   The Anti-Eviction Law is inapplicable. Plaintiff had a Lease and while Defendant advised that he did not intend to renew, Plaintiff sent a letter advising that she was not renewing the Lease. (Letter attached). Plaintiff vacated voluntarily at the end of her lease and was never evicted. Plaintiff occupied the second floor of Defendant's two-family house, which Defendant occupied and continues to occupy on the first floor making the property exempt in any event. The Plaintiff has not offered the Court any basis for adding an Anti-Eviction Count where there was no eviction from a two-family house. The Answers to Interrogatory 1 and 3 clearly state that the Defendant did not want to renew because he was seeking to occupy. Violence was also a concern; it nevertheless was not the primary issue.

2.   The Plaintiff has not articulated nor submitted a proposed pleading setting forth a basis for suing the Defendant's homeowners insurance company. The full policy was produced by Defendant in discovery. The Plaintiff appears not to have filed a claim and clearly has not identified any

BITTIGER ELIAS & TRIOLO P.C.
Campaniello-Cason et al v. O'Reilly
January 14, 2021

---

provision under the policy that would cover the allegations in the complaint. Plaintiff knew that Defendant had a homeowners' policy prior to commencing suit and failed to include any allegations in the filed complaint.

3. National origin was known to the Plaintiff well before the Complaint was filed. The discovery provided no new information and the proposed pleading provides little basis for adding a claim for national origin in the proposed filing and no rationale for now creating a new discovery period. Moreover, Plaintiff would be hard pressed to make a claim concerning an alleged discrimination based on national origin when the Plaintiff's biological daughter is half Mexican and his step-son is Mexican and Peruvian. (See answers to Interrogatory 5)

The Defendant is seeking expeditious resolve of this matter and will seek the Court's permission for filing Summary Judgment upon the conclusion of the discovery period. The Defendant is paying for legal fees which costs affect his retirement plans.

Should Your Honor have any questions or concerns please contact our office. As always, the Court's courtesies and consideration in this matter are greatly appreciated.

Respectfully submitted,

PRISCILLA J. TRIOLO, ESQ.

PJT/sas
cc:   Norrinda Hayat, Esq. (via electronic mail)
      Kevin O'Reilly (via electronic mail)

Samantha Campaniello-Cason
67 Pulaski Avenue
Wallington, NJ 07057

July 15, 2018

Kevin O'Reilly
67 Pulaski Avenue
Wallington, NJ 07057

Re: Notice of intent not to renew my lease.

Dear Kevin O'Reilly

This letter will constitute written notice of my intention not to renew my lease for my apartment at the end of my current lease. I am doing so due to the constant harassment that I was subjected to by you in front of my children.

Upon my departure and walk through I am expected to receive a certified check or money order for the security deposit that I provided in the amount of One Thousand Eight Hundred and Seventy-Five ($1875.00) Dollars. The security deposit shall include all interest that has been earned since September 1, 2016.

Sincerely,

*[signature: Samantha Campaniello-Cason]*

Samantha Campaniello-Cason
516-360-4503

O'REILLY0008

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAMANTHA CAMPANICELLO-CASON, )<br>T.C.. K.C., and GARRETT CASON, JR. )<br>)<br>Plaintiffs, )<br>)<br>)<br>v. )<br>)<br>)<br>)<br>)<br>KEVIN O'REILLY )<br>)<br>Defendant. ) | Civil Case No.:<br>20-cv-03381-MCA-LDW<br><br><br><br><br><br><br>HON. MADELINE COX<br>ARLEO, U.S.D.J. |

## DEFENDANT KEVIN O'REILLY RESPONSE AND OBJECTION TO PLAINTIFFS' FIRST SET INTERROGATORIES

Defendant Kevin O'Reilly's Responses and Objections to Plaintiffs' First Set of Interrogatories, state as follows:

### RESPONSES AND OBJECTIONS TO INTERROGATORIES

### IN THE RESPONSES TO THESE INTERROGATORIES, PLAINTIFF SAMANTHA CAPIELLO-CASON SHALL BE REFERRED TO AS PLAINTIFF.

1. Describe in detail how you came to meet Plaintiff-Samantha Cason. In answering this interrogatory, include:
   a. your relationship with Plaintiff Samantha Campaniello-Cason prior to Plaintiffs' tenancy;
   b. how you came to meet Plaintiff Samantha Campaniello-Cason;

1

    c. your process for selecting Plaintiff Samantha Campaniello-Cason as a tenant; and,

    d. list of anyone you knew or know in common with Plaintiff-Samantha Campaniello-Cason.

**RESPONSE:** I live in a small two-family house in Wallington. I live on the first floor. I was just finishing fixing up the second floor so that I could move upstairs and do much needed renovations of the first floor when my daughter, Julianne Ruth Reilly, approached me about a friend who desperately needed a place to live. She said the Plaintiff and her three children were living in a shelter because they were abused. I was concerned that the apartment would be too small but I agreed to meet the Plaintiff because I was concerned about my daughter's friend being in a danger of violence that put her in a shelter and the safety for the children in a shelter. The Plaintiff told my daughter that she was on the verge of losing her children to her abusive husband due to the fact that she was living in a shelter for two years and they had no place to call home. Plaintiff told my daughter that her abusive husband and his mother were going to take her kids from her with the court's blessing because she was in a shelter.

I met the Plaintiff and her two daughters to show her the apartment in August of 2016. I told her that I was concerned about the size of the apartment. She told me that her family would accommodate. She told me her husband's violence forced her out of the family home and that she and her children were living in a shelter to be safe. Plaintiff asked me to please let her move in with her three children because they needed a safe place to live. Plaintiff also told me on the day she looked at the apartment that she needed to leave with a lease in her hand to prove to the courts that she had found an apartment, or she was going to lose her children. I agreed to give her a lease that day and I went to Staples that afternoon so she could have her lease for the courts. She came back that same day in a rental truck with her son and started moving into the apartment.

I gave the Plaintiff two weeks free rent in August so she could move in immediately and had her rent payments commence on September 1, 2016. After a few months the Plaintiff requested and I consented for her to get a dog which made it even more crowded, but I did not want to deprive the children of a pet.

2.     For every occasion that you called the police on Mr. Garrett Cason, Sr., including but not limited to April 14, 2017, and list each basis for your decision.

**RESPONSE: I did not call the police on Garrett Cason Sr. I called the police because of screaming and cursing from upstairs and I called the police. See document numbered O'REILLY0053.**

3.     Describe in detail every reason(s) that formed the basis of your decision not to renew Plaintiffs' lease. In answering this interrogatory, provide dates of any and all notices and communications you provided to Plaintiffs' that informed them about the non-renewal of the lease that evidenced your basis.

**RESPONSE:** **I tried to hand the Plaintiff a notice of non-renewal and she ripped the notice in half and threw it on the floor. So I posted the non-renewal where I was sure that the Plaintiff could see it. I wanted to give the Plaintiff as much notice as possible so that she had sufficient time to find another place to live.**

**I decided not to renew the lease because I needed to relocate to the second floor because of the deteriorating condition on the first floor. I needed a place to live while construction work was done. That was my original plan which I put on hold to help the Plaintiff. I did not expect the Plaintiff to want to stay beyond the first year, but she asked and I gave her the second year so her son could graduate. There was no reason for the third term as my apartment needed work and Plaintiff needed a bigger place with her growing children.**

**I was also concerned about the violence she had told me about when she rented the apartment. The man she described as violent who had hit her, a woman and the mother of his children, was not welcome in my home. The man who abused her and was the reason she was living in a shelter with her children and as the reason she agreed to cram her family in a two bed-room apartment in a different state gave me great concern in my own home. When he started to become a frequent and over-night visitor in my home. I was fearful. I feared for her safety, the safety of her children, and the recognition that at my age, I could not help if I heard her cries. I also feared for my own safety due to my age.**

3

> I know she says in this lawsuit that my actions were racially motivated. That is simply not true. My decisions concerning the lease were never about race. The construction work needed in my apartment would not permit me to live there while the work was ongoing. I put my personal plans on hold for the Plaintiff to help her. I rented the apartment to the Plaintiff knowing the race of her children which had no bearing on my decision to give her a lease, renew her lease once or to refuse to renew a lease. Race was never even in my thought process until over a year after the Plaintiff moved out that I received a letter from the attorneys in this lawsuit telling me that my failure to renew a lease was racially motivated. That was simply not true then and is not true now. I cared about Plaintiff's children. The Plaintiff's children sometimes visited with me. I purchased school supplies for her older daughter so she could complete a school project because the Plaintiff was at work. I defended Plaintiff's son to a neighbor because of the dog. See document numbered O'REILLY0055 TO O'REILLY0056 previously provided.

4. List every reason(s) that is the basis for including new condition(s) in Plaintiffs' July 31, 2017 lease, including the condition that Plaintiffs give you notice of and receive your written consent before guests were permitted to visit Plaintiffs' apartment.

   **RESPONSE:** The conditions were added when the man the Plaintiff described to me as violent and the reason she and her children were living in a shelter started visiting. See my response to Number 3.

5. From January 1, 2010 through the present, provide the names, contact information, race, and gender of any and all tenants in the Apartment.

   **RESPONSE:** Objection. The names and contact information of prior tenants is confidential as these people are not part of this litigation. Notwithstanding that objection prior to the Plaintiff, the apartment was empty for about 4 years while I made improvements. I intended to move upstairs and start the renovations on the first floor when my daughter called me about the Plaintiff's situation. Prior to that my daughter Julianne Ruth O'Reilly lived there until sometime in 2012 with a boyfriend whose name I cannot recall. Recently my daughter Julianne Ruth Reilly and her husband Matthew Reilly moved into the apartment. My daughter is 50% Mexican. While not a tenant, my step-son who visits me is Mexican and Peruvian.

4

6. Describe in detail any and all actions you took to repair the heating system in the Apartment from the period November 2016 through April 2017. In your answer to this interrogatory, include:
   a. any and all communications between you and Plaintiff Samantha Campaniello-Cason about repairing the heating system;
   b. names, contact information, diagnoses, and estimates of any and all repair companies that you consulted/contracted with; and,
   c. name, contact information, diagnosis, and estimate of the company that repaired and restored the heating system in the Apartment.

**RESPONSE:** There is one furnace and one set of pipes for distribution of heat. The heat was never off in the house because if the heat was off for the Plaintiff, it was off in my apartment.

I always had oil in the tank See documents numbered O'REILLY0064 to O'REILLY0068 previously provided.

When the Plaintiff complained about the heat in the back bedroom, I personally checked the radiators and the radiator valves in her apartment. There appeared to be a problem with the rear bedroom radiator so I bled out the air through the valve in front of Plaintiff and her two daughters and it appeared to be working fine as the steam was able to circulate in the radiator after the air was removed. I told Plaintiff if it presents a problem again to tell me and I will attempt to repair it or buy a new radiator. This happened in the winter of 2016-2017. She renewed her lease in 2017.

I also always personally checked water levels in the furnace.

I also always personally checked to make sure the furnace was firing.

There was another repair incident concerning the stove. Both of us thought the kitchen stove was broken. I went out that night to Lowes and purchased a new stove. It turns out that it was the electrical socket that was causing the problem. I had an electrician fix that the very next day

The Plaintiff and I spoke to each other and exchanged texts when we were not able to talk. Plaintiff gave me access to her apartment. We spoke about the one radiator that seemed not to heat up as well. After the air was bled, I asked the Plaintiff to monitor it and let me know. I do not have texts because I delete them when the conversation is over.

5

7. List any and all deductions from their security deposit that Plaintiffs incurred upon their eviction from the Apartment. In answering this interrogatory include any and all dates and times you notified Plaintiffs of the deductions and their amounts.

   **RESPONSE: Objection. Plaintiff was not evicted; her lease was not renewed for a third term. See documents numbered O'REILLY0014 to O'REILLY0046 previously provided.**

8. List any and all insurance policies pertaining to the Apartment over the past five (5) years. In answering this interrogatory, include:
   a. names and addresses of insurers;
   b. any and all associated account number(s); and,
   c. the policy limits of said insurance policies.

   **RESPONSE: The policy is attached as number O'REILLY0083 to O'REILLY0092.**

9. List any and all mortgage providers that have/had finance(d) your home over the last five (5) years. In answering this interrogatory, include:
   a. names and addresses of mortgage providers;
   b. any and all associated account number(s);
   c. any and all names associated with the mortgage;
   d. any and all designated mortgage agents; and,
   e. the amount of the mortgage.

   **RESPONSE: None.**

10. List any and all bank account(s) that you have even part ownership of in the last five (5) years, which have been used for your real estate dealings connected to the Apartment, including for paying insurance policy premiums, mortgage payments, depositing rent and/or paying for repairs. In answering this interrogatory, include:
    a. names and addresses of financial institutions where the accounts were held;
    b. any and all account numbers associated with the bank accounts; and,
    c. any and all names of individuals who have access to the account(s).

    **RESPONSE: Objection. This is personal and confidential information which request to inquire into bank records is harassment. Notwithstanding that objection, see responses to #7 and #8 and the documents to which they reference.**

6

## **CERTIFICATION**

I hereby certify that the answers provided by me to the foregoing Interrogatories are true. I further certify that all reports, documents and/or other memoranda annexed hereto are true copies of the original or true copies of the only copies made available to me. I further certify that in the event any additional reports, documents and/or memoranda requested herein but presently unavailable to me, are received by me, I will provide same to the propounder of these Interrogatories in accordance with the Rules of Court. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

KEVIN O'REILLY

BY: _/s/ Kevin O'Reilly_

Dated: 12/21/20

8