# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---------------------------------------------------------------

SAMANTHA CAMPANICELLO-CASON,
T.C.. K.C., and GARRETT CASON, JR.

Case No. 20 cv 03381-MCA-LDW

Plaintiff,

**(ORAL ARGUMENT
REQUESTED)**

v.

KEVIN O'REILLY,

Defendants.

---------------------------------------------------------------

## LEGAL BRIEF IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

BITTIGER ELIAS & TRIOLO P.C.
12 ROUTE 17 NORTH, SUITE 206
PARAMUS, NEW JERSEY 07652
TELEPHONE: (201) 438-7770
FACSIMILE:  (201) 438-5726

Of Counsel and on the Brief:
        PRISCILLA J. TRIOLO, ESQ.

**Motion Return Date: May 3, 2021**

## **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT**.................................................................1

**STATEMENT OF FACTS**.......................................................................3

**LEGAL ARGUMENT** ..................................................................3

I.    The Court Should Deny Plaintiffs' Request For Leave to Amend the
      Complaint ..................................................................3

      a.  Standard of Review Governing Motions Seeking Leave to
          Amend a Complaint ..................................................4

      b.  The Court Should Not Permit Plaintiffs to Add PCIP as a
          Defendant as Plaintiffs Have Failed to Establish Standing or Any
          Basis to Assert a Direct Claim Against Defendant's Insurer .............6

      c.  The Court Should Deny Plaintiffs Leave to Amend the
          Complaint to Add Discrimination Claims Based on Familial
          Status ...................................................................9

      d.  The Court Should Deny Plaintiffs Leave to Amend the
          Complaint to Add Discrimination Claims Based on National
          Origin ...............................................................14

      e.  Plaintiffs' instant motion is made in bad faith and the legal
          insufficiency of the claims renders the proposed amendments
          futile ...............................................................17

**CONCLUSION**..............................................................20

# <u>TABLE OF AUTHORITIES</u>

Page

## <u>CASES</u>

<u>Alvin v. Suzuki,</u>
227 F.3d 107 (3d Cir. 2000) …………………………………....…4, 5, 19

<u>Bechtel v. Robinson,</u>
886 F.2d 644 (3d Cir. 1989) …………………………………………….4

<u>Biasi v. Allstate Ins. Co.,</u>
104 N.J. Super. 155 (App. Div. 1969) …………………………………..7

<u>Cornell & Co., Inc. v. Occupational Health and Safety Review Comm'n,</u>
573 F.2d 820 (3d Cir. 1978) …………………………………………….4

<u>Cureton v. NCAA,</u>
252 F.3d 267 (3d Cir. 2001) …………………………………………….5

<u>Foman v. Davis,</u>
371 U.S. 178 (1962) ………………………...………………...……………4, 5, 19

<u>Gen'l Accident Ins. Co. v. N.Y. Marine and Gen'l Ins. Co.,</u>
320 N.J. Super. 546 (App. Div. 1999) ………………………………….7

<u>Harrison Beverage Co. v. Dribeck Imp., Inc.,</u>
133 F.R.D. 463 (D.N.J. 1990) ……………………………………...…5, 19

<u>Jablonski v. Pan Am. World Airways, Inc.,</u>
863 F.2d 289 (3d Cir. 1988) …………………………………….………5

<u>Maertin v. Armstrong World Indus., Inc.,</u>
241 F. Supp. 2d 434 (D.N.J 2002) …………………………………….7

<u>Murray v. Allstate Ins. Co.,</u>
209 N.J. Super. 163 (App. Div. 1986) …………………………………..7

<u>Phillips v. Borough of Keyport,</u>
179 F.R.D. 140 (D.N.J. 1998) …………………………………….………5

Ross v. Lowitz
222 N.J. 494 (N.J. 2015) …………………………………………………..7

Shane v. Fauver,
213 F.3d 113 (3d Cir. 2000) ……………………..…………………...5, 6

## **STATUTES**

N.J.S.A. § 2A:18-61.1 ………………………………………...…...…17, 18

## **RULES**

Fed. R. Civ. P. 12(b)(6) ……………………………...…………….4, 5, 19

Fed. R. Civ. P. 15(a)(2) ……………………………………..………..4

## PRELIMINARY STATEMENT

At the outset, it must be clear that many of Plaintiffs' claims are improperly premised upon an alleged eviction; however, it cannot be disputed that no eviction occurred in this matter.  Plaintiffs, Samantha Campaniello-Cason, T.C., K.C., and Garret Cason, Jr. (hereafter referred to individually by name or collectively as "Plaintiffs"), bring the instant claims against Defendant Kevin O'Reilly (hereafter referred to as "Defendant" or "Mr. O'Reilly"), eighteen months after Defendant's lawful non-renewal following the expiration of the residential lease agreement entered into by and between Ms. Campaniello-Cason and Mr. O'Reilly pertaining to the second-floor apartment of an owner-occupied two-family house.  Significantly, Ms. Campaniello-Cason had also served upon Mr. O'Reilly notice of her intent to vacate the premises at the conclusion of the lease term prior to the non-renewal.  Simply, there was no eviction.  Further, Plaintiffs vacated the premises prior to the conclusion of the lease term without paying the last month of rent.

A Complaint was filed on behalf of Plaintiffs on March 29, 2020, alleging as follows: violation of the Fair Housing Act, 42 U.S.C. 3604(C) (Plaintiff's Count One); violation of the New Jersey Law Against Discrimination, N.J.S.A. §10:5-12(G)(1) (Plaintiff's Count Two); violation of the New Jersey Law Against Discrimination, N.J.S.A. §10:5-12(g)(2) (Plaintiff's Count Three); violation of the Law Against Discrimination, N.J.S.A. §10:5-12(g)(3) (Plaintiff's Count Four);

Intentional Infliction of Emotional Distress (Plaintiff's Count Five); and violation of the Rent Security Deposit Act, N.J.S.A. 46:8-21.1 (Plaintiff's Count Six).

Plaintiffs now move for leave to amend the Complaint as follows: 1) to add Defendant's homeowner's insurance carrier, Philadelphia Contributionship Insurance Company (hereafter referred to as "PCIC"), as an additional Defendant; 2) amending Plaintiffs' original Count One, Count Two, Count Three, and Count Four so as to include allegations of discrimination based upon national origin and familial status; and 3) inserting a new cause of action in place of Plaintiff's original Count Five, alleging violation of the Rent Security Deposit Act, N.J.S.A. 46:8-21.1 against both Mr. O'Reilly and the proposed additional defendant, PCIC. Plaintiffs contend that the basis for the requested amendments to the Complaint is additional information learned during the course of discovery which was not available at the time of filing of the original Complaint. Plaintiffs do not identify what was learned during discovery that was not available prior to the filing of the Complaint.

As set forth in detail below, the amendments proposed by Plaintiffs are not predicated on matters learned in discovery and are entirely without merit, are plagued with procedural deficiencies and, in corresponding fashion to Plaintiffs' original claims, each and every proposed amendment is laced with bad faith. The duplicity of Plaintiffs' instant position is further evidenced by the undisputed fact that Ms. Campaniello-Cason and her children met with Mr. O'Reilly prior to

entering into the lease, thereby diminishing any claim that the non-renewal was premised upon familial status, national origin, or any similar discriminatory basis, as Mr. O'Reilly could have simply declined to offer Plaintiffs a lease if the allegations of discrimination were in fact true. Further, it is undisputed that, upon the initial expiration of the lease agreement, Mr. O'Reilly agreed to renew the lease for a second term. As such, to suggest that Mr. O'Reilly did not know the race, ethnicity and family status until discovery is disingenuous at best.

For the reasons detailed more fully below, Defendant respectfully requests that the Court deny Plaintiffs' pending motion seeking leave to file an Amended Complaint.

## STATEMENT OF FACTS

The relevant facts are set forth in the Certification of Counsel, and exhibits attached thereto, as well as the Affidavit of Defendant Kevin O'Reilly, and exhibits attached thereto, both of which are incorporated herein by reference.

## LEGAL ARGUMENT

I.  **THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR LEAVE TO AMEND THE COMPLAINT.**

The Court should deny Plaintiffs' request for leave to amend the Complaint because Plaintiffs' attempt to add a new defendant, Defendant's homeowner's

insurance carrier, Philadelphia Contributionship Insurance Company ("PCIC"), is improper and futile; the new claims proposed by Plaintiffs are baseless, futile, and premised on information which was available at the time of the filing of the original Complaint and will generate a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6); and Plaintiffs' undue delay in amending its claims would prejudice Defendant.

### a. Standard of Review Governing Motions Seeking Leave to Amend a Complain

Plaintiffs' instant motion is governed by Federal Rule of Civil Procedure Rule 15(a)(2) which provides that, absent consent of the opposing party, a party may amend its complaint with leave of court. See Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) instructs that the court should freely give leave, when justice so requires. Id. However, the Court may deny a motion to amend where there is undue delay, bad faith, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment. See Foman v. Davis, 371 U.S. 178, 182 (1962); Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000).

In deciding whether to grant leave to amend, "prejudice to the non-moving party is the touchstone for the denial of the amendment." Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989) (quoting Cornell & Co., Inc. v. Occupational Health and Safety Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978)). Delay may become

undue when a movant has had previous opportunities to amend a complaint, such as where plaintiffs were repleading facts that could have been pled earlier. Cureton v. NCAA, 252 F.3d 267, 273 (3d Cir. 2001). And the Third Circuit has made clear that undue delay *or* prejudice to defendants can constitute a reason to deny leave to amend. Id. Indeed, undue delay which is not satisfactorily explained is equivalent to bad faith. Phillips v. Borough of Keyport, 179 F.R.D. 140, 149 (D.N.J. 1998).

A court should not grant leave to amend where the proffered amended complaint would not cure the legal insufficiency of the claims. See Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 292 (3d Cir. 1988) ("Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss.").

A motion to amend is properly denied where the proposed amendment is futile. See Foman, supra, 371 U.S. at 182; Alvin, supra, 227 F.3d at 121. An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." Harrison Beverage Co. v. Dribeck Imp., Inc., 133 F.R.D. 463, 468 (D.N.J. 1990) (internal citations omitted). To evaluate futility the District Court uses the same standard of legal sufficiency as applied for a motion to dismiss under Rule 12(b)(6). Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the

plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency.  Id.

    **b.** ***The Court Should Not Permit Plaintiffs to Add PCIP as a Defendant as Plaintiffs Have Failed to Establish Standing or Any Basis to Assert a Direct Claim Against Defendant's Insurer.***

    Plaintiffs seek leave to add Defendant's liability insurer, PCIC, as a direct defendant based upon the allegation that Defendant's failure to renew Plaintiffs' lease violated the Anti-Eviction Act which, without legal authority, Plaintiffs conclude constituted a "wrongful eviction" and assert that same implicates PCIC's coverage.  Plaintiffs offer only one, single source of purported procedural authority in support of this request.  Plaintiff rely upon Berger v. Cushman & Wakefield of Pa., Inc., No. 13-5195, 2016 U.S. Dist. LEXIS 32562, 9-10 (E.D. Pa. Mar. 10, 2016)[1] for the proposition that "[c]ourts have held that allowing a plaintiff to join a third party would serve justice and promote judicial efficiency" and  "refusing to allow plaintiff to join a third- party defendant would obviate the purpose of the third-party practice and fly in the face of judicial efficiency."  See Plaintiffs' Brief, pg. 7. However, Plaintiffs' reliance upon same is misplaced.

---

[1] To the extent it is germane to this Court's determination, Defendant notes that this decision by the United States Court of Appeals for the Second Circuit is not mandatory authority and, thus, is not binding upon this Court.

Plaintiffs are unable to show any legal or factual basis, or offer any authority whatsoever, to support the proposition that Plaintiffs, as a third-party claimant, may assert a direct claim against Defendant's liability insurer. To the contrary, the New Jersey Supreme Court has held that third-party claimants may not assert claims against the insured defendant's liability carrier absent an assignment from the insured. See Ross v. Lowitz, 222 N.J. 494, 514 (N.J. 2015). It is well established that our courts have declined to recognize a third-party claimant's ability to bring a direct action against the liability insurer. See Maertin v. Armstrong World Indus., Inc., 241 F. Supp. 2d 434, 454 (D.N.J 2002); Biasi v. Allstate Ins. Co., 104 N.J. Super. 155, 159-60 (App. Div. 1969).

In fact, even in those cases where the third-party claimant holds a judgment against the insured-defendant, "[t]he tort judgment creditor is considered a 'stranger' to the insurance contract as he is not a party or a third-party beneficiary to it." Maertin v. Armstrong World Indus., 241 F. Supp. 2d 434, 454 (D.N.J. 2002) (citing Gen'l Accident Ins. Co. v. N.Y. Marine and Gen'l Ins. Co., 320 N.J. Super. 546, 553-54 (App. Div. 1999); Murray v. Allstate Ins. Co., 209 N.J. Super. 163, 169 (App. Div. 1986); Biasi v. Allstate Ins. Co., 104 N.J. Super. 155, 159 (App. Div. 1969)).

As set forth above, the law on the issue is well-established and clear. It cannot be disputed that Plaintiffs are third-party claimants and may not assert claims against Defendant's liability carrier, PCIC, as there has been no assignment from Defendant.

7

In fact, Plaintiffs are even further removed than in the cases cited above where the third-party claimant held a judgment against the insured-defendant, as there is no judgment in their favor against Defendant. Notwithstanding that, there has been no finding that Defendant's failure to renew Plaintiffs' lease violated the Anti-Eviction Act, as alleged by Plaintiffs and, Plaintiffs offer no support or authority for the assertion that a non-renewal of a lease in an owner-occupied two-family house coupled with a tenant's notice of intent to vacate would constitute a "wrongful eviction" and implicate PCIC's liability coverage or provide any basis under which Plaintiffs could assert a direct claim against PCIC.

In short, Plaintiffs, third-party claimants or "strangers" to the PCIC insurance policy and are precluded from asserting a claim against PCIC directly.

Further, Plaintiffs were well aware not only of the identity of PCIP but also its position on denying the claim prior to the commencement of this action. Counsel for the Plaintiffs states to the Court:

> More specifically Defendant's first counsel received a letter from PCIC about the denial of coverage on January 13, 2020. Defendant's then counsel then disclosed this letter to Plaintiffs on January 21, 2020. In the January 21, 2020 letter PCIC expressly states that "the policy also includes liability coverage for personal Injury, which is defined as: "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor."

(See, Triolo Cert., ¶9 and Exhibit "H" thereto).

Therefore, while the underlying claim against PCIC is disputed as viable, Plaintiffs failure to implead PCIC when the Complaint was filed in March of 2020 (two months after receiving the letter of January 13, 2020 from the insurance carrier's counsel) should prohibit Plaintiffs from delaying this action any further by amending their Complaint so as to add a party which was always known to Plaintiffs, in fact even well before this action was commenced. Plaintiffs have acted in bad faith by advancing this untimely, baseless request and by failing to withdraw same after being put on notice by PCIC's counsel. (See, Triolo Cert., ¶8 and Exhibit "G" thereto).

It is respectfully submitted that Plaintiffs' request for leave to add Defendant's liability insurer, PCIC, as a direct defendant must be denied.

### c. *The Court Should Deny Plaintiffs Leave to Amend the Complaint to Add Discrimination Claims Based on Familial Status.*

The Court should deny Plaintiffs leave to file its proposed Amended Complaint to add discrimination claims based upon familial status because, as detailed below, this proposed amendment is improper, futile, and would cause undue prejudice to Defendant.

The instant request is based solely upon Plaintiffs claim that, during the course of discovery, Plaintiffs learned additional information which was not available at the time of the filing of the original complaint. Specifically, Plaintiffs assert that

"Defendant contends that one of the reasons he did not renew the lease for the third term was due to the presence of her children."[2]  See Plaintiff's Brief, pg. 3.  In support of this assertion, Plaintiffs rely upon the following partial quotation from one of Defendant's Interrogatory responses "Plaintiff needed a bigger place with her growing children."  (See, Triolo Cert., Exhibit "F," Defendant's Interrogatory Responses at ¶3).

At the outset, it must be noted that this is a quintessential example of the blatant and ongoing bad faith exhibited by Plaintiffs in this litigation.

Plaintiff Samantha Campaniello-Cason's first meeting with Mr. O'Reilly in 2016 included her children and it was at that time that the initial lease agreement between the parties was signed. (See, Triolo Cert., Exhibit "F," Defendant's Interrogatory Responses at ¶1 and Exhibit "E," Plaintiffs' Uncertified Interrogatory Responses at ¶6).

Upon the expiration the initial lease agreement, after Ms. Campaniello-Cason had already been living there for a year with her three children and dog, Mr. O'Reilly agreed to renew the lease for a second term of one year.  For Plaintiffs to suggest that knowledge of Ms. Campaniello-Cason's children or the fact that they were growing up was just now conveyed in discovery is absurd.

---

[2] This assertion is a blatant mischaracterization of Defendant's discovery response and Defendant vehemently disputes same.

Further, Plaintiffs cherry-pick a partial sentence from a rather lengthy discovery response by Defendant and present this quotation out of context in an attempt to twist or frame the meaning of the words. Since the context is both relevant and necessary, a complete recitation of Defendant's response to Interrogatory No. 3 is as follows:

> RESPONSE: I tried to hand the Plaintiff a notice of non-renewal  and she ripped the notice in half and threw it on the floor. So I posted the non-renewal where I was sure that the Plaintiff could see it. I wanted to give the Plaintiff as much notice as possible so that she had sufficient time to find another place to live.
>
> I decided not to renew the lease because I needed to relocate to the second floor because of the deteriorating condition on the first floor. I needed a place to live while construction work was done. That was my original plan which I put on hold to help the Plaintiff. I did not expect the Plaintiff to want to stay beyond the first year, but she asked and I gave her the second year so her son could graduate. There was no reason for the third term as my apartment needed work and Plaintiff needed a bigger place with her growing children.
>
> I was also concerned about the violence she had told me about when she rented the apartment. The man she described as violent who had hit her, a woman and the mother of his children, was not welcome in my home. The man who abused her and was the reason she was living in a shelter with her children and as the reason she agreed to cram her family in a two bed-room apartment in a different state gave me great concern in my own home. When he started to become a frequent and over-night visitor in my home. I was fearful. I feared for her safety, the safety of her children, and the recognition that at my age, I could not help if I heard her cries. I also feared for my own safety due to my age.

I know she says in this lawsuit that my actions were racially motivated. That is simply not true. My decisions concerning the lease were never about race. The construction work needed in my apartment would not permit me to live there while the work was ongoing. I put my personal plans on hold for the Plaintiff to help her. I rented the apartment to the Plaintiff knowing the race of her children which had no bearing on my decision to give her a lease, renew her lease once or to refuse to renew a lease. Race was never even in my thought process until over a year after the Plaintiff moved out that I received a letter from the attorneys in this lawsuit telling me that my failure to renew a lease was racially motivated. That was simply not true then and is not true now. I cared about Plaintiff's children. The Plaintiff's children sometimes visited with me.   I purchased school supplies for her older daughter so she could complete a school project because the Plaintiff was at work. I defended Plaintiff's son to a neighbor because of the dog. See document numbered O'REILLY0055 TO O'REILLY0056 previously provided

(See, Triolo Cert., Exhibit "F," Defendant's Interrogatory Responses at ¶3 and

Affidavit of Kevin O'Reilly, ¶9).

Defendant vehemently disputes any and all claims of discrimination by

Plaintiffs, including discrimination based upon familial status. (See O'Reilly

Affidavit at ¶10).   Contrary to Plaintiffs assertion, the selected language from

Defendant's discovery response – "Plaintiff needed a bigger place with her growing

children" – is not in and of itself indicative of discrimination based on familial status.

Rather, it is indicative of the reality that Plaintiff Garrett Cason Jr. was an 18-year-

old young man in 2018, not a minor child as he was in 2016 at the time that the first

lease agreement was executed or in 2017 at the time when the lease agreement was renewed for an additional one-year term.

Rather, the reference to Plaintiff needing a "bigger place with her growing children" – and this is clear from the context of the response as a whole – pertains to the intent of the parties and particularly that of Plaintiff. It was Defendant's understanding that Plaintiff always intended for this rental arrangement to be temporary, that her decision to live there in the interim was made in haste or desperation, as it was a better alternative than living at shelter, but was not her long-term plan. (See O'Reilly Affidavit at ¶11). Defendant's belief and understanding as to Plaintiff's intention at that time, as well as the actual growth (aging) of her children, is the substance of the meaning behind the language now relied upon by Plaintiffs in support of the proposed discrimination claim based upon familial status.

It is clear based on the foregoing that Plaintiffs' requested amendment is entirely baseless and nothing more than an attempt to broaden the existing and infirm discrimination claims against Defendant, all of which are without merit (this, along with Plaintiffs bad faith, is further discussed in detail below). As such, Plaintiffs proposed amendment must not be permitted as it is improper, futile, and would cause undue prejudice to Defendant having to needlessly defend against, yet another, unfounded discrimination claim.

### d. *The Court Should Deny Plaintiffs Leave to Amend the Complaint to Add Discrimination Claims Based on National Origin.*

The Court should further deny Plaintiffs leave to file its proposed Amended Complaint to add discrimination claims based upon national origin because, as detailed below, this proposed amendment is also improper, futile, and would cause undue prejudice to Defendant.

Relevant to the request to add national origin to the discrimination counts, Plaintiffs proposed Amended Complaint contains changes as follows. First, the term "national origin" is added to the last sentence of each of the discrimination counts. Second, the insertion of one additional sentence, "Both Plaintiff Campaniello- Cason and her mother are Hispanic" to the existing language "Defendant called Samantha a "spic" several times throughout her tenancy."  See Plaintiffs' Proposed Amended Complaint, Paragraph 41.  It should further be noted that the allegation of pejorative language is denied in Defendant's Answer. (See, Triolo Cert., Exhibit "J," Defendant's Answer).

At the outset, it is clear that Plaintiffs are attempting to replead the already infirm allegations contained in the original Complaint, but disingenuously try to disguise this effort by claiming that the proposed amendment is based upon additional information learned during the course of discovery which was not available at the time of the filing of the original complaint, when everything on which they rely was known and available, except counsel's letter of January 14, 2021

which is not certified by the Defendant and should not be interpreted in the Plaintiff's convoluted manner.   Specifically, that "additional information" is, in Plaintiffs' words, "that Defendant does not deny using this offensive language nor does he deny prohibiting Ms. Cason's mother from visiting." <u>See</u> Plaintiff's Brief, pg. 4. Plaintiffs' effort in this regard is transparent.

It appears that Plaintiffs partially and improperly attempted to allege facts which would support a discrimination claim based on national origin in the original Complaint but presumably failed to meet the legal threshold and now attempt to rectify that error by adding language that does not cure the fact that there is no cognizable discrimination claim.   Plaintiffs attempt to replead this claim is pitiful and procedurally improper.   Defendant specifically denied any alleged racial or discriminatory behavior in his Answer to the Complaint and no interrogatory was posited concerning racial or ethnic discrimination to which the Defendant could fail to deny.   To the extent that the proposed amendment relates solely to Plaintiffs' mother, it fails because she is not a party to the lease agreement or to this litigation.

In light of the foregoing, it is significant that Plaintiffs are unable to provide any genuine or adequate explanation for the failure to initially plead in March of 2020 or amend sooner. Futility aside, the Court also should deny Plaintiffs leave to amend because Plaintiffs have had more than sufficient time to add new facts and claims but failed to do so because there are no facts to support this false narrative.

Defendant vehemently disputes any and all claims of discrimination by Plaintiffs, including discrimination based upon national origin. (See O'Reilly Affidavit at ¶12). Further, Plaintiffs' assertion that Defendant "does not deny" an allegation is both factually and legally erroneous and to the extent that Plaintiffs are suggesting that the failure to state a denial in a manner acceptable to Plaintiffs' counsel constitutes an admission of liability, is truly outrageous and disingenuous. Defendant has consistently denied Plaintiffs claims from the very outset of this litigation, as set forth in the Answer to the Complaint where the allegations are denied. (See, Triolo Cert., Exhibit "J," Defendant's Answer). Further, it is the burden of the Plaintiffs to prove their claims, which they cannot, it is not Defendant's burden to disprove them, even though he has denied them.

It is unclear as to the purpose of Plaintiffs further reference to the letter of Defendant's counsel dated January 14, 2021 in connection with this requested amendment. The January 14, 2021 letter references the fact that Defendant's relatives are, like Plaintiffs, of Hispanic descent. The significance of this fact is – in Defendant's own words, under oath – that he finds this allegation "particularly offensive since my family (my own child) is part Hispanic. In fact, my daughter is half Mexican and my stepson is half Mexican and half Peruvian. I would never even think of insulting their nationality by calling any person of Hispanic descent a pejorative term." (See O'Reilly Affidavit at ¶12).

For the same reasons that Defendant opposes the amendment discussed in the paragraph above, Defendant respectfully submits that this proposed amendment must also be denied.   Again, it is clear that Plaintiffs' requested amendment is procedurally improper and, more importantly, is entirely baseless and permitting this amendment would be futile given the clear insufficiency of this claim.  If this Court were to permit this amendment, Defendant would be caused undue prejudice by having to file a motion to dismiss and needlessly defend against, yet another, unfounded discrimination claim.

### e. *Plaintiffs' instant motion is made in bad faith and the legal insufficiency of the claims renders the proposed amendments futile.*

Plaintiffs brief in support of the instant motion contains a brief reference to allegations that Defendant violated the Anti-Eviction Act (N.J.S.A § 2A:18-61.1). <u>See</u> Plaintiffs' Brief, pg. 7.  Specifically, Plaintiffs assert that Defendant did not have sufficient "good cause" for his failure to renew Plaintiff's lease as statutorily required under <u>N.J.S.A</u> § 2A:18-61.1.  However, Plaintiffs' position fails as a matter of law.

The statute cited by Plaintiffs in support of this position that requires a landlord to show good cause for non-renewal of a lease specifically exempts owner-occupied two-family houses, providing in relevant part as follows:

> No lessee or tenant or the assigns, under-tenants or legal representatives of such lessee or tenant may be removed by the

Superior Court from any house, building, mobile home or land in a mobile home park or tenement leased for residential purposes, **other than (1) owner-occupied premises with not more than two rental units** or a hotel, motel or other guest house or part thereof rented to a transient guest or seasonal tenant; (2) a dwelling unit which is held in trust on behalf of a member of the immediate family of the person or persons establishing the trust, provided that the member of the immediate family on whose behalf the trust is established permanently occupies the unit; and (3) a dwelling unit which is permanently occupied by a member of the immediate family of the owner of that unit, provided, however, that exception (2) or (3) shall apply only in cases in which the member of the immediate family has a developmental disability, except upon establishment of one of the following grounds as good cause…

(emphasis added).

See <u>N.J.S.A</u> § 2A:18-61.1.

The property which is the subject of the rental agreement between the parties is presently, and was at all times relevant hereto, a two-family home owned and occupied by Defendant. (<u>See</u> O'Reilly Affidavit at ¶2-4).  As such, the exception stated in subparagraph 1 of the statute cited above applies and, thus, the "good cause" requirement is not applicable here.

As such, Plaintiffs' assertion that Defendant was subject to the "requisite" good cause standard for non-renewal of the lease is a deliberate misrepresentation of the applicable law in this matter.  Defendant was under no legal obligation to renew Plaintiff's lease upon the expiration of the first lease term or the second lease term nor was he required to show grounds of good cause in the event of non-renewal.

Further, Defendant complied with his obligations as landlord under the lease agreement and provided Plaintiff with proper notice of the non-renewal. Again, to be clear, **Defendant has no legal obligation to provide any reason or show grounds of good cause in connection with non-renewal of the lease agreement.** In light of same, it cannot be disputed that Plaintiffs proposed amendment is clearly futile – it is frivolous and advances a claim or defense that is legally insufficient on its face – and, thus must be denied. See Foman, supra, 371 U.S. at 182; Alvin, supra, 227 F.3d at 121; Harrison Beverage Co., supra, 133 F.R.D. at 468. Further, it will give rise to a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiffs must not be permitted to continue to wage this legal crusade against Defendant which is entirely without merit and serves no purpose other than to defame and drain him of the minimal financial resources at his disposal. The ongoing bad faith exhibited by Plaintiffs is clear given the continued pursuit of claims against Defendant which have no legitimate legal or factual basis and which are presented to the Court by mis-stating the law and the facts. The undue prejudice to Defendant as a result of Plaintiffs actions in this regard is significant, as Defendant is waiting for discovery to be concluded such that a Summary Judgment Motion may be filed to dispose of this matter.

It is also worth noting that Defendant did agree to a renewal of the lease following the expiration of the initial lease when, again, he had no legal obligation

to do so.  Plaintiffs are unable to reconcile why Defendant would renew the lease after the expiration of the first term when the family status, race and nationality of all Plaintiffs were fully known if the non-renewal of the second lease term was in fact premised upon discrimination.  This is, again, indicative of Plaintiffs bad faith.

## **CONCLUSION**

Based upon the foregoing, it is again respectfully requested that Plaintiffs instant motion seeking leave of Court to amend the Complaint be denied in its entirety.

Respectfully submitted,

By: _Priscilla J. Triolo_
PRISCILLA J. TRIOLO, ESQ.
Attorney for Defendant
Bittiger Elias & Triolo P.C.
12 Route 17 North, Suite 206
Paramus, New Jersey 07652
ptriolo@bittlaw.com
(201) 438-7770

Dated:  April 9, 2021