# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SAMANTHA CAMPANIELLO-CASON, | ) | |
| T.C., K.C., and GARRET CASON, JR., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-cv-03381-MCA-LDW |
| | ) | **(ORAL ARGUMENT REQUESTED)** |
| KEVIN O'REILLY., | ) | |
| | ) | |
| Defendant. | ) | |

## REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Norrinda Brown Hayat Esq., Attorney
Victor Monterrosa Jr., Esq., Attorney
William Lee, Student Attorney
Michael Bernardini, Student Attorney
Michael Chachura, Student Attorney
Rutgers Law School Civil Justice Clinic
123 Washington St.
Newark, N.J. 07102
(973) 353–0661
(973) 353–3397 (fax)
norrinda.hayat@rutgers.edu
Victor.Monterrosa.Jr@gmail.com
lee.william@rutgers.edu
mchachura@gmail.com
mb852@rutgers.edu

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ I

SUMMARY OF THE ARGUMENT ................................................................. 1

LEGAL ARGUMENT ..................................................................................... 1

    I.    LEAVE TO AMEND SHOULD BE GRANTED LIBERALLY ....................... 1

    II.    A FAMILIAL STATUS DISCRIMINATION CLAIM IS SUPPORTED BY
    DEFENDANT'S OWN BRIEF. .................................................................... 2

III. . WHETHER DEFENDANT MADE DISCRIMINATORY STATEMENTS EXPRESSING A
PREFERENCE BASED ON NATIONAL ORIGIN IS AN ISSUE FOR THE TRIER OF FACT 4

IV. .... DEFENDANT CONSTRUCTIVELY EVICTED PLAINTIFFS BECAUSE DEFENDANT
RENDERED THE PREMISE SUBSTANTIALLY UNSUITABLE AND SERIOUSLY
INTERFERED WITH THE BENEFICIAL ENJOYMENT OF THE PREMISE ......................... 7

V. ................................................................PCIC AS ADDITIONAL DEFENDANT
...................................................................................................................... 9

CONCLUSION .............................................................................................. 9

# TABLE OF AUTHORITIES

**Cases**

Cerros v. Steel Technologies, Inc., 398 F.3d 944 (7th Cir. 2005) .................................. 5

Chancellor v. Pottsgrove Sch. Dist., 501 F. Supp. 2d 695 (E.D. Pa. 2007). .................... 1

Couey v. Sterling, 224 N.J. Super. 581 (Law. Div. 1988). ............................................ 7

Elfman v. Berman, 56 Pa. D. & C.4th 171 (C.P. 2001), ............................................... 8

Fair Hous. Cong. v. Weber, 993 F.Supp. 1286 (C.D. Cal. 1997) ............................... 3, 4

Fishel v. Rosen, 2019 N.J. Super. Unpub. LEXIS 4502 *1 (Law Div. 2019) .................. 7

Forman v. Davis, 371 U.S. 178 (1962) ....................................................................... 1

Gonzalez v. N.Y. State Dept. of Correct. Serv., 122 F.Supp. 2d 335 (N.D.N.Y. 2000) ..... 5

Higgins v. Whiting, 102 N.J.L. 279 (Sup. Ct. 1926); .............................................. 7, 9

Iniestra v. Cliff Warren Investments, Inc., 886 F.Supp. 2d 1161 (C.D .Cal. 2012) .......... 4

Jancik, v. HUD, 44 F.3d 553 (7th Cir. 1995). ...............................................................3

JS Properties, L.L.C, v. Brown and Filson, Inc., 389 N.J. Super. 542 (App. Div. 2006) ..............7

Juarez v. Northwestern Mut. Life Ins. Co., Inc., 69 F.Supp.3d 364 (S.D.N.Y. 2014) ...................6

McCurdy v. Wyckoff, 73 N.J.L. 368 (Sup. Ct. 1906). ................................................7, 9

Plaisance v. Phelps, 845 F.2d 107 (5th Cir. 1988) ...........................................................3

Ragin v. N.Y. Times Co., 923 F.2d 995 (2d Cir. 1991). ..................................................3

Reste Realty Corp, v. Cooper, 53 N.J. 444 (1969). .......................................................7, 8

See U.S. v. Hadlock, 2010 WL 3313772, No. CV 08-3074-CL, *1 (D. Or. Jan. 27, 2010) ...........4

U.S. v. Hunter, 458 F.2d 205 (4th Cir. 1972). ...............................................................3

W.G. Nichols, Inc. v. Ferguson, No. 03-824, 2004 U.S. Dist. LEXIS 7331 (E.D. Pa. Apr. 21,
    2004) ...............................................................................................................8

**Statutes**

42 U.S.C. §3604(c) .....................................................................................................3

N.J.S.A. §2A:18-53 ...................................................................................................7

**Rules**

Fed. R. Civ. P. 15.......................................................................................................1

**Other Authorities**

Paula M.L. Moya, Why Latina/O? Why Academy, 14 Harv. Latino. L. Rev. 295 (2011). ............5

See Richard Delgado, Understanding Words That Wound (2004). .................................................5

## SUMMARY OF THE ARGUMENT

This Court should grant the motion amend the complaint because: 1) leave to amend is granted liberally; 2) there are facts alleged, which if true, would prove both a familial status and national origin claims and the veracity of those claims is a question for the trier of fact and 3) defendant constructively evicted Plaintiffs because Defendant rendered the premises substantially unsuitable and seriously interfered with the beneficial enjoyment of the premises, which also amounts to a wrongful eviction.

## LEGAL ARGUMENT

## I.    LEAVE TO AMEND SHOULD BE GRANTED LIBERALLY

Again, Rule 15 provides  that a party may amend its original complaint with leave of court, and that "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Generally, courts have held that leave to amend should be granted freely and that courts should operate with "strong liberality" when considering whether to grant leave to amend. See Forman v. Davis, 371 U.S. 178, 182 (1962) (stating that leave sought should be "freely given," in absence of any apparent or declared reason).

Such liberality is admittedly not limitless, but it is the burden on the party who opposes the amendment to show the existence of prejudice, bad faith, undue delay, or futility. See Chancellor v. Pottsgrove Sch. Dist., 501 F. Supp. 2d 695, 700 (E.D. Pa. 2007). Defendant has not done so here. In the present matter, no reason exists for the Defendant to object to the Court granting leave. Fundamentally, Plaintiffs motion to amend does not display the existence of any

1

of these factors because Plaintiffs added new claims as a result of Defendant's admissions and newly discovered information during the discovery process.

## II.   A FAMILIAL STATUS DISCRIMINATION CLAIM IS SUPPORTED BY DEFENDANT'S OWN BRIEF.

Plaintiffs request the court to add discrimination based on familial status as a claim in this case because Defendant allegedly based his non-renewal on his belief that Plaintiff Samantha Cason "needed a bigger place with her growing children." See Defendant's Interrogatory Responses at ¶3. Defendant made this statement before and after this case was filed.

First, and to be clear, Defendant made such statements during Ms. Cason's tenancy. See id. Defendant does not deny making such statements. In fact, and to the contrary, Defendant repeats them by reciting his entire response to interrogatory number three. See Defendant's Brief, pg. 11-12. Defendant's argument against amending the complaint to add this claim is essentially that Plaintiffs "cherry-pick a partial sentence." See id., pg. 11. Not only is this a disingenuous characterization of a citation to Defendant's own statement, but it also does not negate the central fact that Defendant did in fact make such a statement, which was an illegal justification for non-renewal under civil rights laws.

Second, it bears stating, Defendant fails to appreciate the current stage of litigation and the intended scope of the amended Complaint and its accompanying briefs. Defendant argues that "[he] vehemently disputes any and all claims of discrimination by Plaintiffs, including discrimination based upon familial status… the selected language from Defendant's discovery response- 'Plaintiff needed a bigger place with her growing children' is not in and of itself indicative of discrimination based on familial status." See id., pg. 12. Interestingly, Defendant fails to cite to any legal authority to support this self-proclaimed legal proposition: not one case, either federal or state, is cited or

mentioned. <u>See</u> <u>id</u>. Rather, Defendant argues that his statement does not constitute familial discrimination because "Plaintiff Garrett Cason Jr. was an 18-year old young man in 2018, not a minor child as he was in 2016 at the time that the first lease agreement was executed….," which has no bearing on the case as the two other children were minors. <u>See</u> <u>id</u>., pg. 12-13. Defendant further cites how "[i]t was [his] understanding that Plaintiff always intended for this rental arrangement to be temporary…," but it was he and not she who ended the tenancy. <u>See</u> <u>id</u>., pg. 13.

Defendant improperly places himself as the fact-finder and the ultimate arbiter of the claims, arguing that his subjective mindset and understanding should control the resolution of this particular claim and negate any existence of familial status discrimination. <u>See</u> <u>id</u>., pg. 12-13. Whether or not Defendant's statement constitutes familial status discrimination is a question for the jury at trial. <u>See</u> <u>Plaisance v. Phelps</u>, 845 F.2d 107, 108 (5th Cir. 1988) ("The function of a jury is to try the material facts."). Said another way, this is an issue of material fact that should be determined by a fact finder, not precluded from their hearing at all by denying Plaintiffs' motion to amend.

Third, substantively, Defendant is incorrect. A statement is sufficient to violate 42 U.S.C. §3604(c) if the statement, when heard by an ordinary listener, would conclude that a statement suggests a preference. <u>U.S. v. Hunter</u>, 458 F.2d 205, 215 (4th Cir. 1972). In the context of families, the proper inquiry is whether statement would suggest to an ordinary listener that people with a particular familial status are preferred or not preferred in the housing context. <u>Ragin v. N.Y. Times Co.</u>, 923 F.2d 995, 999-1000 (2d Cir. 1991). A claim based on a discriminatory familial statement does not require a showing of discriminatory intent. <u>Fair Hous. Cong. v. Weber</u>, 993 F.Supp. 1286, 1290 (C.D. Cal. 1997); <u>Jancik, v. HUD</u>, 44 F.3d 553, 556 (7th Cir. 1995). Defendant cites no legal authority to support his assertion that "… Defendant's discovery response …. is not in and of itself

3

indicate of discrimination based on familial status." This is likely because there is none. The law is actually contrary to Defendant's position. See U.S. v. Hadlock, 2010 WL 3313772, No. CV 08-3074-CL, *1 (D. Or. Jan. 27, 2010) (holding that Defendant's questions regarding specific questions about potential renter's families and their children constituted discriminatory familial status statements under 3604(c)); see also Iniestra v. Cliff Warren Investments, Inc., 886 F.Supp. 2d 1161 (C.D .Cal. 2012) (holding that the following restrictions against children in the form of an adult supervision rule, the pool usage rule, the unsupervised children memo, the June 2011 memo, and curfew rule constituted a discrimination against families with children); Fair Hous. Cong., 993 F.Supp at 1290-91 (holding that Plaintiffs challenge to a rule that stated "[c]hildren will not be allowed to play or run around inside the building area at any time because of disturbance to other tenants or damage to building property" was a limitation on the use by children tenants of the apartment facilities and the ordinary reader could not interpret it otherwise).

As such, the claim for familial status discrimination should be added to the complaint so that Plaintiffs' evidence of this illegal preference, including that obtained throughout discovery, can prove this claim at trial because justice so requires. The Court will neither cause undue prejudice nor will the Court act improperly or in futility by granting the leave Plaintiffs ask to amend its complaint.

## III.   WHETHER DEFENDANT MADE DISCRIMINATORY STATEMENTS EXPRESSING A PREFERENCE BASED ON NATIONAL ORIGIN IS AN ISSUE FOR THE TRIER OF FACT

Plaintiffs request this Court to add discrimination based on national origin as a claim based on Defendant's use of the pejorative term "spic."

4

The word "spic" is used to convey both racial animus and national origin discrimination. Historically, "spic" was defined as a "derogatory word for Mexicans, Mexican-American and Puerto Ricans, and has since "expanded to encompass other Hispanic groups." <u>See</u> Richard Delgado, <u>Understanding Words That Wound</u> 56 (2004). The epithet targets a wide group of individuals, and it is principally used to offend and insult individuals of Hispanic descent, individuals of a specific ethnicity and country, individuals from Spanish-speaking countries (including Latin America), and other groups. <u>See</u> Paula M.L. Moya, <u>Why Latina/O? Why Academy,</u> 14 Harv. Latino. L. Rev. 295, n.7 (2011). Simply put, the term has long been accepted as a discriminatory word on the basis of national origin. <u>See</u> <u>Gonzalez v. N.Y. State Dept. of Correct. Serv.</u>, 122 F.Supp. 2d 335, 343-44 (N.D.N.Y. 2000) (noting that the Defendant's use of "spic" was a race-based derogatory term); <u>see also</u> <u>Cerros v. Steel Technologies, Inc</u>., 398 F.3d 944, 950 (7th Cir. 2005) ("the [lower] court stated that the remarks and graffiti employing the terms 'spic' and 'wetback' and the instruction to 'go back to Mexico' are clearly race and national origin related…").

Throughout Defendant's discovery responses, Defendant denies the that he uttered the word "spic" on the basis that his family members' share the same national origin as Plaintiff. In his answer to Interrogatory 5, Defendant notes how "[his] daughter is 50% Mexican… [his] step-son… is Mexican and Peruvian." <u>See</u> Defendant's Interrogatory Responses at ¶3. Defendant makes the same argument in his affidavit: "[he] would never even think of insulting… by calling any person of Hispanic descent a pejorative term" because "[his] daughter is half Mexican and [his] stepson is half Mexican and half Peruvian." <u>See</u> O'Reilly Affidavit at ¶12. The fact that Defendant is related to people of national origin in which he thinks fall under the pejorative term, even if true, are of no consequence under the law. Under the Fair Housing Act, the fact that Defendant may not

discriminate against all members of a protected class is not evidence that he did not discriminate against Plaintiffs. See generally Juarez v. Northwestern Mut. Life Ins. Co., Inc., 69 F.Supp.3d 364, 370 (S.D.N.Y. 2014) (finding that "a defendant is not insulated from... liability for intentional discrimination against some members of a protected class merely because not every member of the class becomes a victim of the discrimination.").

Here, too, Defendant argues that the motion to amend should not be granted because his response within the answer and his own personal affidavit should control. Again, denials within the Answer are not dispositive and cannot usurp the role of the fact-finder. Interestingly, Defendant states that "it is the burden of the Plaintiffs to prove their claims, which they cannot, it is not Defendant's burden to disprove them, even though he has denied them." See Defendant's Brief, pg. 16. Once again, Defendant does not seem to comprehend the stage of litigation in which the parties are in. Trial has not even begun so satisfaction of the "burden" is not necessary at the amended complaint stage. Therefore, the claim on national origin discrimination should be added to the complaint so that Plaintiffs using this admission and evidence obtained throughout discovery can prove this claim at trial because justice so requires. The Court will neither cause undue prejudice nor will the Court act improperly or in futility by granting the leave Plaintiffs ask to amend its complaint.  As stated above, there exists a material issue of fact that the Court should allow a fact finder to determine. The Court should grant Plaintiffs request to add national origin.

## IV. DEFENDANT CONSTRUCTIVELY EVICTED PLAINTIFFS BECAUSE DEFENDANT RENDERED THE PREMISE SUBSTANTIALLY UNSUITABLE AND SERIOUSLY INTERFERED WITH THE BENEFICIAL ENJOYMENT OF THE PREMISE

Defendant points to the fact that the lone exception to the Anti-Eviction Act applies in this case. *N.J.S.A.* §2A:18-53. Even if the Court accepts Defendant's reading of the law, the wrongful eviction claim would not be properly dismissed. In owner-occupied residential tenancies, tenants must be removed by order of the Special Civil Part of the Superior Court's Law Division. Id. at §2A:18–5; Couey v. Sterling, 224 N.J. Super. 581, 584 (Law. Div. 1988). The Anti-Eviction Action only prohibited Plaintiffs from raising a "good cause" defense to challenge an eviction. Alternately, contracts law still applies to a lease in New Jersey whether the Anti-Eviction applies or not.

Constructive eviction is defined as any act or omission of a landlord "which renders the premises substantially unsuitable for the purpose for which they are leased, or which seriously interferes with the beneficial enjoyment of the premises, is a breach of the covenant of quiet enjoyment and constitutes a constructive eviction of the tenant." Fishel v. Rosen, 2019 N.J. Super. Unpub. LEXIS 4502 *1, *29 (Law Div. 2019) (quoting Reste Realty Corp, v. Cooper, 53 N.J. 444, 457 (1969)). See also JS Properties, L.L.C, v. Brown and Filson, Inc., 389 N.J. Super. 542, 548-49 (App. Div. 2006) (holding that the doctrine of constructive eviction may be invoked where there has been a significant and substantial interference with the tenant's use of the premises, such a failure to provide heat or continuous failure to repair plumbing); see also Higgins v. Whiting, 102 N.J.L. 279, 280-81 (Sup. Ct. 1926); see also McCurdv v. Wvckoff, 73 N.J.L. 368, 369 (Sup. Ct. 1906). But see JS Properties, L.L.C, 389 N.J. Super, at 550-551 (finding that a claim for constructive eviction may be waived if the tenant continues to hold possession of the premises for

7

an unreasonable amount of time after the interference arises but that determining what constitutes an unreasonable delay in continued occupation "depends on the circumstances of each case"). This amounts to failure of consideration, entitling a tenant to vacate the premises. Reste Realty Corp., 53 N.J. at 457. That right to vacate the leased premises is the same whether stemming from breach of a covenant of quiet enjoyment or from breach of any other dependent covenant. Id.

In the instant matter, Defendant interfered with Plaintiffs' beneficial enjoyment of the premises by subjecting Plaintiffs to racial slurs that made Plaintiffs fearful for their lives and the lives of their young children/siblings. Moreover, Defendant rendered the premise substantially unsuitable by turning off the water to Plaintiffs' apartment and by not providing Plaintiffs with heating during the winter. Indeed, Defendant's actions —when taken together— created a totality of circumstance that rendered the apartment unlivable. In Elfman v. Berman, our sister courts in Pennsylvania looked at a totality of circumstances to see if a constructive eviction was executed. See generally Elfman v. Berman, 56 Pa. D. & C.4th 171 (C.P. 2001), see also W.G. Nichols, Inc. v. Ferguson, No. 03-824, 2004 U.S. Dist. LEXIS 7331 at 55. (E.D. Pa. Apr. 21, 2004). In Elfman, defendant landlord changed the locks on the building, failed to provide essential services, willfully neglected the building, failed to comply with city codes such that the government inspectors shut down the building and failed to take all steps necessary for the government to re-open the building. See 56 Pa. D. & C.4th 171 (C.P. 2001) at *1-*11.

The present case involves tenants who suffered from the behavior of their landlords in residential lease. Specifically, Plaintiffs was made to live with: 1) racial slurs directed at Plaintiffs (Plaintiffs' Amended Complaint ¶ 20; 2) water shutoffs (Id. at ¶ 30); 3) heating shutoffs so much that Plaintiffs bought their own heaters during the winter (Id. at ¶ 12-13; 4) physical confrontations with the landlord. (Id. at ¶25; 5); and policy where landlord had to approve of guests before they

8

could visit the apartment (Id. At ¶17, 22). All these actions taken by Defendant-landlord created an atmosphere that was unsuitable for the purpose it was rented— a living situation— and which seriously interfered with the beneficial enjoyment of the premises. The state courts in New Jersey have held that a tenant has been constructively evicted when their landlord has failed to provide heat. See Higgins at 280-81. And similarly situated courts have upheld that a failure to repair plumbing was enough to evoke a proper claim for constructive eviction. See McCurdy, 73 N.J.L. at 369.

The other actions by Defendant— namely making racial slurs, physically confronting his tenants and making his tenants agree to his unreasonable requests to screen their guests— add to the totality of circumstances that made the apartment unlivable. For these reasons, Plaintiff vacated when the most reasonable opportunity was present. Ultimately, a fact-finder should decide whether Plaintiffs were constructively evicted even before an eviction notice was presented to her. For the aforementioned reasons, the Court should find that Plaintiffs have offered facts that, if proven at trial, might to the trier of fact suggest that their apartment was unlivable and, thus, that they were constructively evicted.

## V.    PCIC AS ADDITIONAL DEFENDANT

Plaintiffs withdraw their request to add Philadelphia Contributionship Insurance Company ("PCIC") as an additional defendant at this time.

## **CONCLUSION**

For these reasons, Plaintiffs respectfully request that the court grant the motion to amend the complaint.

9

Respectfully Submitted:


/s/ Victor Monterrosa, Jr.


Norrinda Brown Hayat Esq., Attorney
Victor Monterrosa Jr., Esq., Attorney
William Lee, Student Attorney
Michael Bernardini, Student Attorney
Michael Chachura, Student Attorney
Rutgers Law School Civil Justice Clinic
123 Washington St.
Newark, N.J. 07102
(973) 353–0661
(973) 353–3397 (fax)
norrinda.hayat@rutgers.edu
Victor.Monterrosa.Jr@gmail.com
lee.william@rutgers.edu
mchachura@gmail.com
mb852@rutgers.edu


Dated: April 26, 2021